Mr. Stewart, please proceed. I may please the court. My name is Chris Stewart. I represent Rem Holdings in this appeal of a inter partes re-examination. Time permitting, I'd like to address three issues that are particularly significant in the board's decisions that this is not an exhaustive list. First, their disregard for the presumption of nexus in secondary considerations. Second, the flawed claim construction of audio output, a term in claim 14. And third, time permitting the pervasive use of hindsight bias, particularly in claim 7. So starting with the secondary considerations issue, the reason this is so significant is because we submit that if the board's analysis of the presumption of nexus here was allowed to stand, it would render that presumption essentially meaningless. What the board found was that there was an acknowledged presumption of nexus for the majority of the asserted claims or the claim inventions and the commercial products with one exception, the v3 square reader, which Square argued or the mapped against claim 14, but Square itself, who was the manufacturer, that reader didn't dispute that it practiced claim 14. So with that one exception, there was a presumption of nexus as between those commercial embodiments for which there was record evidence and the claimed inventions, and yet the board proceeded to analyze that evidence by finding the presumption rebutted simply because certain other factors may have contributed to the success of Square and its other copycats, commercial readers. In the gray brief at 17 to 19, you argue that you say that you argued for a construction of audio output before the PTAB, but the citations you gave us seemed to only show that you raised the issue of proper construction to the examiner. Can you cite where you raised the construction to the PTAB and explicitly pro-offered that argued for construction? Certainly. First of all, the point as to waiver of the claim construction position is flawed by the mere fact that the only time this issue came up on appeal to the board was on a cross appeal that Square brought. We had won on claims 14 through 20 at the original appeal stage, so we obviously didn't appeal the claim construction issue because we had won and didn't need to. On cross appeal, even though we didn't expressly call it claim construction, it's at appendix 1290 where we specifically talked about this issue if not by calling a claim construction in substance. So at appendix 1290 when discussing why the board should affirm the examiner's finding that Odagiri did not disclose an audio output, we said, and I'm quoting from that page, to the extent that an input associated with a host device, e.g. a headset jack, and an audio output, e.g. output signal, have been equated by the office such as an error. So we addressed it in the context of whether Odagiri disclosed an audio output, but that argument in substance is our claim construction position, even though we didn't have to raise it because as we cited in our briefing, an appeal, we nevertheless raised it in substance. And then because of the sort of odd procedural posture of this case, when it went back down to the examiner and we reopened prosecution, we weren't allowed to raise claim construction arguments at that point. So when it went back up to the board... Why couldn't you raise the claim construction issue? Well, the rules of reopened prosecution are that you can't re-urge new arguments, you can only... Well, but you said it's the same in the first one. That's in the cross appeal. So in the cross appeal, we did discuss it and it was raised, that's right, but when you reopen prosecution, the restriction is actually that you can only present new evidence or amend claims. That's what the restriction says. We could have potentially, I guess, moved for a further re-hearing after the reopened prosecution and the renewed decision by the board, but at that point it was optional. At that point it was no longer a new ground of rejection and we, in the interest of speed and efficiency, decided to come straight to this court because we think the board squarely addressed the issue of that claim construction, has a clear position on it, that Odagiri's headset jack as a whole can constitute the audio output, and so there's nothing more for the board to review and this court can address that claim construction issue. If it's alright, I'll go back to my points about secondary considerations. Again, the office's response to this notion of the board repeatedly allowing speculative May evidence to rebut the presumption of nexus is simply to say, oh no, they didn't do that. They looked at a bunch of other evidence in addition to talking about the presumption. Speaking of speculative, you, in the Blue Brief, you discussed commercial success figures taken from Square's public filings and publicly traded stock information and ask us to take judicial notice of those numbers. That information wasn't on record before the PTL was. Yes, Your Honor, and the reason we asked the court to take judicial notice of it is because those proceedings or those developments all occurred after the case was entirely submitted. Well, what authority allows us to consider numbers not available to the agency in reviewing an obvious misdetermination? I think it's that federal rule of Appellate Procedure 201F and that Iorotti case we cited in our footnote in our brief, that when it's, the point of judicial notice is something that's not reasonably in dispute. I don't think there's any way that... Well, it may well be it's not reasonably in dispute, although it may be reasonably in dispute. I'm not going to get there, but the PTO didn't have it. But the PTO did have similar evidence of Square's success and market presence at the time. So you could have argued that. Well, Your Honor, we did argue that. That was also... I mean, you could have argued that to us rather than asking us to take judicial notice of something. Your Honor, I would submit that we are arguing both. We're suggesting that the evidence expressly before the PTO was sufficient and decisive of non-obviousness by itself, and then in addition, the fact that Square has continued to garner additional market share and grow its market cap on the backs of this invention even after these proceedings is further evidence that when this court does its de novo review of obviousness in light of these secondary considerations, it should find claims non-obvious. So wrapping up on the secondary considerations point, ECOLOCHEM and DEMOCO are cases from this court that say it's legal error. We have to retain the presumption of nexus between the success and claimed inventions unless it's fully rebutted. You cannot fully rebut a presumption of nexus by simply saying that other things may have also contributed. And ECOLOCHEM even says that even where other things did contribute, unless they actually have proven the contribution of the claimed inventions. Why do you think you get the presumption of nexus in this case? Why do you think you're entitled to a presumption of nexus? Because the claimed inventions are co-extensive with the commercial products for which there was success. Well, you're saying that, but your expert didn't articulate, even though he identified where each of the various elements was, he didn't articulate one of them. And then you made an argument, well it's present in version 2 of SQUARE, so it must be present in version 3. The board didn't have to accept that argument. Lots of versions have changes. They don't have to accept that. You have to establish that they're co-extensive. That's your burden. Right. In the context of this case, we believe that, especially when you're talking about a pre-mutation case of nexus, which is just a sufficient evidence for a reasonable backfiner to infer the fact in dispute. And when you have a circumstance where this is somewhat non-public information, the actual circuit design of SQUARE's V3 reader wasn't publicly available to REM, and SQUARE was the requester across the aisle and obviously could have produced circuits that disprove the presence of a signal setting device if that was a dispute. But you have to prove co-extensive. Before you can get that presumption, you have to prove that they're co-extensive. So whether it's hard for you to prove or not is not relevant to what your burden is. And our argument is that we did prove it by presenting everything but that one element, circumstantial evidence of that What is the circumstantial evidence of the one element? The fact that it was in an earlier version? The fact that it was in an earlier version, the fact that the board's construction of signal setting device is broad enough. And that would be a substantial evidence question, which is a question because it's a question of fact, right? How in the world do you think I can overturn on substantial evidence a board's determination that because one version of SQUARE had a particular element, it cannot necessarily infer that a subsequent version of SQUARE also had that same element on a substantial evidence review standard? I think the key point, Your Honor, is the fact that SQUARE did not dispute it and as we cited in our brief, even effectively admitted it. They said at the point when we were talking about the commercial success of the V3 reader, something to the effect of, well, even if you do consider that success, it's only relevant to Claim 14 and not to prior claims. Effectively acknowledging it is relevant to Claim 14 because Claim 14 practices the V3 reader or the V3 reader of Claim 14. So when SQUARE, who is the person who manufactures the device, doesn't dispute it and accepts that Claim 14 and the V3 reader are coextensive and the board is considering that evidence and determining whether the presumption has been met, we contend that there is no substantial evidence that could say the presumption has not been met, especially in a prima facie matter. I want to turn to the claim construction point again, having addressed the waiver argument that Judge Wall had raised. The claim construction of the term audio output was so unreasonably broad as to essentially vitiate the term audio from the claim and make it inconsistent with other language within the same claim element, not just a claim differentiation argument, but within the same claim and the same claim element. As to the first point about audio being vitiated, Odagiri, which is the reference the examiner relied upon, shows the absurdity of this construction. Odagiri has a circuit switching mechanism that when you plug in its peripheral digital camera switches away from audio circuitry to imaging and data transfer circuitry. It also has a dedicated power line that is distinct from the standard left-right audio contacts, and yet that was still held to be an audio output simply because in some other configuration not relevant to the combination, it can support audio. That, as the court said in Rayman Machine with regard to a thumb switch, it just disregards the first word of the term. A thumb switch in Rayman Machine couldn't be something merely capable of actuation by a thumb because why did they say thumb? Here, audio output can't be something merely capable of sometimes producing audio because it's an audio output. The second point is with respect to the claim element itself. It says there is an output plug adapted to be inserted into a input associated with a host device, and then further says that the audio output provides power. That claim element all by itself makes clear that the input associated with the host device is the jack which receives the plug. The audio output is something subsidiary, and with that reading, Rems Construction is the only one that makes any sense. I see I'm into my rebuttal time, so if there are any questions, I'll reserve the rest of your time for rebuttal. Ms. Craven, please proceed. Good morning, Your Honors, and may it please the court. Starting with the presumption of nexus, there are two reasons why the board did not have to apply the presumption of nexus for the V3 version. One, as you've discussed, is the REM didn't show that V3 reader had all the limitations of the claims. Second, this is an inter-parties re-exam, so it's not a contested case like an inter-parties review or a CLASCO, Inc. versus Apple. So in CLASCO, that also was a re-exam, and this court made a statement that the presumption would apply for a product that had all the limitations of the claim. However, that was not contested among the applicants. The briefs didn't go into whether a presumption should apply, so there really wasn't a chance for an opportunity for this court to really dig into the issue and make a determination if in a re-exam, inter-parties re-exam, the presumption should apply. And we're arguing here the office's position is it shouldn't apply. This isn't, as the regulations say, it's not a contested case. There's not an opportunity for discovery. After there's been found a substantial and new question of patentability, the third party requester doesn't necessarily stay in the case. Obviously, Square isn't here now. And so it's the examiner's burden in those cases, just like ex-party re-exam and just like prosecution, to set forth the Prima Fecha case for the rejection. And the board here weighed all the evidence of the secondary considerations and found that for V1 and V2, the board did apply a nexus, that that nexus was rebutted, and for V3, that there wasn't sufficient evidence of a nexus, and therefore that didn't credit any of the commercial success. The board also did say that if they did have a nexus, that it still wouldn't have outweighed the strong prior evidence of obviousness. Unless there's any other questions about the secondary considerations, I'll turn to Claim 14 and the construction of audio output. I guess, Matt, why don't you go back over why you think the nexus shouldn't apply here. I understand that you think this is not a contested proceeding according to CTO regulations of what amounts to a contested proceeding, but when we use the word contested proceeding in WBIP to distinguish between IPRs and sort of ex-parte, I don't remember if we referenced the board regulation, but I don't think so. I think we used it in the colloquial sense, you know, that it is a proceeding in which there are two parties and therefore an opportunity. I mean, Huang was the original case, the ex-parte case, way back when that says you can't apply the nexus in a pure ex-parte scenario because the PTO shouldn't be burdened with having to develop or respond to evidence like that. And we completely agreed, but then said when there's somebody on the other side, it's then not the PTO's burden to do that, it's the other side's burden. So why, assuming I'm not just going to rely on the fact that in a regulation you defined what you meant by contested proceeding, that's not necessarily what I meant by contested proceeding when I use the word. So what, why do you think from a practical matter, you said no opportunity for, I'd like to know all your reasons. So there's no opportunity for discovery, so the inner parties review proceedings, the new AIA proceedings and the district court proceedings have opportunities for discovery, so that you could go out and actually get, in the interest of justice I think for the IPR, get discovery about sales of the other party or other aspects that you might, a third party might need to have in order to respond to evidence of secondary consideration. So there's none of that opportunity in the ex parte. I don't understand, we're just talking about nexus, so the only question there is co-extensiveness, that's the only question. So why would discovery somehow impact the ability to properly argue co-extensiveness? Because you have to rebut the presumption, so if you don't have the ability to go out and get... No, but you don't get to the presumption until they've proven co-extensiveness. Right, so once they prove the co-extensivity, then there's no opportunity for you to go out and get evidence perhaps that you would need to go out and get evidence. So that usually lies with the patent owner who is asserting the commercial success. This is a bit of an unusual situation where the patent owner and the person with the commercial success are on opposite sides of the feed, but normally it's the patent owner... So they're asserting Square's commercial success, so Square would be in possession of all of that information, but you're saying in the normal case the patent owner would be asserting its own commercial success, and is there not then any opportunity in the patent owner's case to solicit or obtain or present evidence? They can present evidence, comments, and evidence is accepted, but they wouldn't have an ability to get any discovery from the patent owner like you would in a district court or perhaps in the IPR or CBM. I'm kind of wondering, we say perhaps because that's what I was thinking, really, how much discovery really is there in these IPRs, and what really are the rights? Because we've said this applies in an IPR, so what are the rights in an IPR to do that? Right, there is an opportunity if you... a motion to the board... You have to file a petition to the director and say in the interest of justice. In your experience, are you aware of any case where that's ever occurred? I am not standing here today aware of any. Yeah, me neither. It's an interesting proposition. Kind of like amendments. But we know, we absolutely know in the re-exam context that they can't get that discovery if they want it, and there's also the problem for the office. If an inter-parties re-exam has started and then the third party drops out, we're still in the same sort of situation in the office, unable to get that information. Theoretically, that could happen in an IPR as well, and we've already said in the IPR context, the nexus applies. That's true. I think in that context, the petition is largely the bulk of everything in the IPR where then, I mean, they obviously, they have the IPRs is instituted, but here in the inter-parties re-exam, it's going back and forth with the examiner making the decision, and if the examiner then doesn't have that third party, they're in the same position as they would be with the ex-parte re-exam, where all they have is what the patent owner is giving them, and that's why we think the presumption shouldn't apply. Turning then to Claim 14 and the construction of audio output, it's our alternative ground on their first appeal to the board, and though they say that they obviously made the blanket statement that audio output is a signal, but they didn't provide any argument about why it's a signal like they initially did for the examiner. Also, when you go back, when you choose to open prosecution, there is opportunity to introduce new evidence. Obviously, the board has found facts that the examiner can't overrule, but you can introduce new testimony on the claim construction. You can also then preserve the argument for the second board appeal, and there was no argument to the board presented to them for decision in the second appeal process, and so this court is facing the claim construction issue for the first time. Though, if you want to find they have a way to decide the claim construction, I think based on the claim differentiation and the disclosures and the specification, it's not audio output construed as an audio signal is too narrow a construction. If you look at Claim 15 that further defines the audio output, it says the audio output has a left audio out channel, and that's the structure in itself, so it's hard to construe audio output as a signal, because a signal doesn't have a channel, but an audio output structure then does have that additional structure, and that's why we think that audio output cannot be tuned, it cannot be construed as just the audio signal, and therefore under the examiner's construction, Bodeguera either directly teaches using the headset, unmodified, or one of skill and art would have made the modification. So, unless there's any questions, I will give up my time. Thank you, Ms. Craven. Mr. Stewart, you have some rebuttal time. May it please the court, on this notion of the presumption applying in this proceeding, I'll first note that that was not actually raised by Square in the proceedings below, or raised by the examiner. The board treated the presumption as applicable in this case, so that argument is technically waived for being raised for the first time in a discovery. Well, the third-party requester here was Square, the company that was responsible for the manufacture of the products and their commercial success, and so any dearth of discovery because of the procedure here was remedied by the fact that they themselves were part of it. I think Ms. Craven's point is that if we make a holding that the presumption applies in inter partes re-exams, it's going to be a holding that applies to everybody, and there might not be prejudice in this particular case, because Square is in possession of all the data. You're absolutely right, they wouldn't be prejudiced, but in the average normal case, and she's certainly right, it is the patent owner alleging their own commercial success normally, and so that situation would create a problem with prejudice because the petitioner or the opponent in the IPR would have no basis for securing that information. So your problem isn't really to tell me that in this case the prejudice wouldn't occur, but am I being asked to adopt a rule of law in most cases where it would? Well, the rule of law issue, I think, is covered by the fact that, again, that this particular issue or this particular problem was waived in this case, and so you wouldn't be making a rule of law for all cases, you would just be saying that in this case the board applied the presumption and it was soon assumed, and therefore in this case we're going to hold them to that treatment of the presumption. I want to also address the waiver that was mentioned at the very end. The board's finding that Odagiri disclosed an audio output was something that REM had to assume true in that reopened re-examination. Even though REM could introduce new evidence, it couldn't contradict the actual findings of the board, and I think, although I don't have a site for you, in a footnote to our briefing on remand to the examiner in that reopened prosecution, we even expressly observed we still disagree with this claim construction, but we simply understand we are not allowed to raise it at this point. That's why we waited to raise it to this court. We think the board's position is clear and there's nothing further for this court to consider other than actually overturning that claim construction. Finally, I want to highlight with my remaining time the point about Claim 7, the court's use of hindsight bias in evaluating the Yvonne Mueller combination. That combination simply described an obscure situation where when hot-syncing the card reader to a PC, you would be unable to swipe cards, and the examiner used hindsight to imply that a person of skill looking at that very innocuous problem, easily corrected by simply removing the hot-sync cable, would motivate a person of skill to create a redundant secondary input using the possible motivation with hindsight, knowing the benefits of Dr. Morley's invention, and so that's another reason why, especially given the lack of consideration of secondary considerations which provide a check on hindsight, that combination in Claim 7 was error. My time is up, and so thank you. Thank you, Mr. Stewart. I thank both counsel for their argument. The case is taken under submission.